His Honour JOHN TREADWELL, Lieutenant-
Governor,

Honourable OLIVER ELLSWORTH,
Honourable WILLIAM HILLHOUSE,
Honourable JOHN CHESTER,
Honourable ROGER NEWBERRY,
Honourable AARON AUSTIN,
Honourable JONATHAN BRACE,
Honourable JOHN ALLEN,
Honourable CHAUNCEY GOODRICH,
Honourable WILLIAM EDMOND,
Honourable ELIZUR GOODRICH,
Honourable MATTHEW GRISWOLD, and
Honourable STEPHEN T. HOSMER,

ASSISTANTS.

---

## Dickinson *v.* Kingsbury.

### In the Court below,

1805.

ANDREW KINGSBURY, Esq. Treasurer of the State of Connecticut, *Plaintiff;* SYLVANUS DICKINSON, *Defendant.*

THIS was an action of debt on bond, dated September 16th, 1799, for two hundred dollars.

There was a plea in bar, reciting the bond, the condition of which was, that one Benjamin (Negro) should appear before the Superior Court, and answer to a complaint made against him for burglary. The plea then stated, that the plaintiff's action was commenced on the 15th day of February, 1802, and not

*Sheriff may take bail, in a criminal case, of a prisoner, committed for not finding bail, and release him from confinement.*

B

DICKINSON
v.
KINGSBURY

before ; on the 7th day of September, 1799, a complaint was exhibited, by a grand-juror, against Benjamin for burglary ; a warrant was thereupon issued, by which he was arrested, and brought before a justice for examination ; the justice having heard the complaint, and the testimony relative thereto, gave judgment against Benjamin, that he should become bound, with sufficient sureties, in the sum of two hundred dollars, to the Treasurer of the State, to appear before the next Superior Court, and that, on failure of so doing, he should be committed to the gaol in New-Haven County ; he neglected to procure bail ; and the justice thereupon committed him to prison. It was further alleged, that Jehu Brainerd, Esq. was Sheriff of New-Haven County ; and that he, acting in that capacity, after the commitment of Benjamin, and while he remained a prisoner, took the bond, payable to the Treasurer of the State without his knowledge or consent, and thereupon immediately let Benjamin escape from gaol, and go at large. The Superior Court, for appearance before which Benjamin was committed, ordered the Sheriff to set him at the bar, to plead to an information, which the Attorney for the State had filed against him. But the Sheriff neglected to comply with that order ; and the Court thereupon amerced him, for such neglect, in the sum of two hundred dollars.

To this plea there was a demurrer, and judgment by the Court below, that the plea was insufficient.

The general error was assigned.

The cause was argued the year before, at Hartford ; and continued to this term, for further advice. The Court being now composed of several new members, ordered the cause put down for another argument.

*Smith,* (of Woodbury,) *Smith,* (of New-Haven) and *Staples,* for the plaintiff in error.

1. At common law, a Sheriff, *ex officio*, has no powers to take bail in any criminal cause; that being wholly a judicial, and not a ministerial act.

In England, the Sheriff acts in two capacities—judicial and ministerial. In his County Court, and Torn, he was a judge; and in his County, emphatically the keeper of the peace.

As a ministeral officer, it was his duty to execute all commands directed to him, by proper authority. Though united in one man, yet the offices were, in their nature, wholly distinct. (*a*)

The very manner, in which the bail is taken, shews conclusively, that the Sheriff, as such, cannot take it. A Sheriff, sitting as a judge, may take a recognizance; but, as Sheriff, cannot, it being a judicial act. (*b*)

In our country, the Sheriff has always been wholly a ministerial, and not a judicial officer; this country having been settled long after the Sheriff had been stripped of his judicial character in England. He is, therefore, destitute of the first requisite necessary to enable him to take a recognizance; and a bond under *hand* and *seal*, for the enlargement of, or for favors shewn a criminal, is a novelty here, and in Great-Britain. There is, therefore, no principle of the common law, which will warrant a Sheriff in bailing a criminal.

2. If the common law fail, resort must be had to the statute.

But two statutes have been urged as at all bearing upon this subject. The first act is found in the first pages of our Statute Book; and is sometimes called our BILL OF RIGHTS.

(*a*) In England, the Sheriff is almost wholly a ministerial officer, having long since been deprived of nearly all his judicial character. *Magna Charta. St. West.* 1. 23 *Hen. VI.* 2 *Co. In.* 2 *Reeve's H. E. L.* 263, 467. 2 *Hawk. P. C.* 128. 1 *Bac. Abr.* 840.

(*b*) *Dalt. Of. Sh.* 1, 25. 6 *Bac. Abr.* 139.

So far as respects this subject, the act provides, that no man's person shall be imprisoned, except by authority of law. And who ever thought, that a man might be imprisoned, except by the authority of law? The question still arises, when are men imprisoned by authority of law? Suppose we admit, that the criminal in this cause, was imprisoned without the authority of law, does it of course follow, that he was legally bailed? If a man be illegally imprisoned, it by no means follows, that any and every method of bailing him must, of course, be legal.

The other act is entitled " An Act concerning Bail, in civil and criminal cases." (c)

From the title of this act, we should judge, that it was made to regulate the taking of bail in *criminal*, as well as civil cases ; yet the provisions of the act are expressly confined to bail in civil cases. Neither this, nor any other statute affords a hint, that a *Sheriff*, in a *criminal* cause, may take bail.

3. Suppose we admit, that the Sheriff may, in analogy to his power in civil causes, take bail bonds under *hand* and *seal*, in criminal causes ; where is the law, which warrants his taking the bond in the name of another person? By common and statute law, both here and in England, the Sheriff's bail bonds must be taken in his own name. A bail bond, therefore, when taken in the name of another, is not only *without* precedent ; but is directly opposed both to principle and precedent. It is opening a door to the Sheriff, to practice all manner of frauds and oppression. A bond like this would not be good, even in a *civil* suit. It, therefore, has not the analogy of civil suits to support it.

4. By the pleadings, it appears, that more than twelve months elapsed, between the accruing of the right of action, and the commencement of the suit. The right of action is, therefore, barred by the limiting clause of the statute. (d)

(c) *Stat.* 33. *edit.* 1796.          (d) *Stat.* 39. *edit.* 1796

If this bond be considered, as having been taken by virtue of the statute last cited, there is an end of the question. All bonds taken by virtue of this act, must be sued within twelve months, after a right of action shall have accrued.

If it be said, that the bond was taken in analogy to this statute ; the analogy must go through. If in analogy to the first clause, the bond is made good, certainly in analogy to the limiting clause, it is destroyed. This also proves conclusively, that the bond is neither dependent upon, nor authorized by the statute.

5. The consideration of this bond is confessedly a voluntary escape, suffered by the Sheriff, or gaoler. To cover this escape, the Treasurer of the State has taken a bond. If the Sheriff takes a bond to cover a voluntary escape, is the bond valid ? If not, is it made legal, by being in the name of the Treasurer of the State ? He is not the keeper of any prison ; nor has he the custody of any criminal. He can neither confine, nor enlarge a criminal. Can the Treasurer of the State visit our gaols, and there operate a general gaol-delivery ? If he has no authority to set criminals at liberty, and does give a criminal his liberty, and take a bond to indemnify himself, it follows pretty obviously, that the consideration of that bond is illegal. The Secretary of the State might as well go to our gaols, and let out prisoners, and take bonds for their safe return.

Again, That the consideration of this bond is tortious and illegal, appears from the doings of the Superior Court, set forth in the pleadings. The Court amerced the Sheriff, for the very act of taking this bond, and permitting the escape of his prisoner. Unless the taking the bond was a tortious act, and the consequent escape illegal, the Court could never have amerced the Sheriff. And yet it must be confessed, that the same Court have decided, that these very tortious and illegal acts can be a good consideration of a contract.

6. Another objection is, that this bond was taken, and is prosecuted, without the knowledge, privity, or consent of the plaintiff. This appears sufficiently from the pleadings. To be legal, the bond must cover a contract mutually assented to. But from the pleadings it appears, that no such contract was ever made. The plaintiff has never assented to the contract. Of course, in any event that might happen, he could not have been bound. It follows, with the same certainty, that the defendant cannot be bound; for every contract is binding on both, or neither of the parties.

7. If the bond is considered as the property of the State, and the suit the act of the State, as it undoubtedly is, and the assent and name of the Treasurer merely nominal; we answer, that this again shews, that both the bond and the suit are improper, and illegal. By the pleadings it appears, that the Sheriff has been amerced for this very escape, and the State thus satisfied. The State are now, therefore, seeking a double satisfaction. If judgment is now rendered for the plaintiff below, the money collected must, by law, go into the State Treasury. The Sheriff cannot claim a penny of it. And yet the Sheriff has been amerced, and has satisfied the State once, for this very offence. Can the State thus pursue, and demand satisfaction after satisfaction?

Obj. 1. It is enquired, by what law does the *defendant* excuse himself from paying this bond, and performing this contract: As long as he is asked to make but one satisfaction, can he complain, because he does not know where the money is going?

If the contract is illegal, according to the known and general principle of law, the defendant has not only a right; but is the only person, who can, with propriety, object to the illegality of the contract. If the contract has been once satisfied, it is sufficient for the defendant, and ought to satisfy the plaintiff. May not the defendant ask the plaintiff with much greater force—If you, the plaintiff have, for the in-

jury, got one satisfaction, is not that sufficient? Of what consequence to you can it be, to ask from whom the satisfaction came? If you now pursue the defendant, it must be to obtain two sactisfactions for the same thing.

Obj. 2. The second objection urged is, that this is clearly a bailable offence ;—that when the justice had ordered bonds, and committed the prisoner, he had become *functus officio ;*— that unless, under these circumstances, the Sheriff may take bail, the prisoner must lie in gaol till the next term of the Court.

This, it is said, would be very inconvenient. If it be so, make a law to remedy the inconvenience. That the law should place a man, charged with a crime, in an inconvenient situation, is not much to be wondered at. When a man stands charged with an offence, it is commonly very inconvenient to lie under the weight of that charge, till next term, awaiting his trial. We do not realize the inconvenience to be greater in this case, than is incident to the very nature of the thing. The whole business of defending in a criminal process, is one scene of inconvenience.

But the inconvenience complained of is not to be charged to the law, but to the criminal's inability to procure bail, at the time the justice gives the opportunity. The justice must take bail, if offered. If, however, bail cannot be procured, the judges of the Court which has final jurisdiction of the cause, by the common law may, at any time, let the prisoner to bail. The inconvenience is, therefore, mostly imaginary.

Obj. 3. But it is further objected, that this practice has obtained, more or less, in every County.

In the first place, we deny that this practice has obtained to any very considerable extent. It is not believed, that a case like it can be found There certainly is no adjudged case reported.

**1805.**

*DICKINSON*
*v.*
*KINGSBURY*

But if this practice is extensive, and, as we have shewn, not legal, it ought the sooner to be corrected. And it is appropriately the business of this Court, to correct this, and all other errors, in judicial proceedings.

*Ingersoll* and *Daggett* for the defendant in error.

It may be sufficient for the defendant's counsel to answer the objections urged against a recovery on the bond.

1. It is said, that the Sheriff, in Connecticut, is merely a ministerial officer, and, as such, has no power to take bail.

The Sheriff is authorized, by statute, to take bail for appearance, in civil suits. In this, he acts judicially, and we think it can be shewn, that in the act in question, he is warranted by our law. There can be no objection to his letting to bail in one case, which is not equally forcible against the other. It is, indeed, a clear point, that he can take no bond for *ease* and *favour*, nor does this bond compare with that.

2. The Sheriff, if allowed to take a bond at all, cannot take it to the Treasurer of the State.

To this it may be answered, the bond is to secure the State ; it is for the benefit of the State ; and if the Treasurer chooses to receive it, and to commence an action upon it, can the obligor object ? A subsequent assent is equal to a prior authority. This objection, therefore, and another, viz. That the suit is prosecuted without his assent, are answered, by the record's shewing, that the Treasurer is the plaintiff in the original suit.

3. The statute of limitations is interposed.

It is obvious that the statute relied on, regards bail taken in *civil suits* exclusively ; nor was the bond in question taken under the authority of the statute regarding " bail in civil and

in criminal cases ;" no word or provision in the act will
countenance the idea.

4. It is urged, that the Sheriff has been amerced ; and
therefore, the permitting the prisoner to go at large, was
an illegal act ; and a bond to secure against such illegal act
must be void.

If this reasoning be just, it will prove also, that no bond
for appearance—for the liberties of the prison, nor any re-
ceipt taken for property seized by an execution, is valid ;
for in each of these cases, the officer becomes responsi-
ble for the debt, and also, in one or more of them, may be
fined. (e)

These objections will be further noticed, in the following
brief view of the reasons for sustaining a suit on this bond.

The first statute in our law book, which is properly de-
nominated A BILL OF RIGHTS, contains the following para-
graph :

" And that no man's person shall be restrained, or impris-
" oned, by any authority whatsoever, before the law hath
" sentenced him thereunto, if he can and will give sufficient
" security, bail, or mainprize, for his appearance and good
" behaviour in the mean time, unless it be for capital
" crimes, contempt in open Court, or in such cases wherein
" some express law doth allow of, or order the same."

This is a great constitutional provision, to be denied to no
citizen, and of prime importance in a free government.  If
the Legislature have made no laws, by which its benefits
can be secured to those charged with bailable offences, it is
to be lamented.  The third paragraph of the " Act concern-
ing Delinquents," (f) taken in connexion with this provis-

(e) See the " Act for appointing Sheriffs," &c. Stat. 383. edit. 1796.
(f) Stat. 142. edit. 1796.

C

ion in the bill of rights, clearly authorized the taking of bail in this case. But it is said, that the justice of the peace, before whom the delinquent was arraigned, was alone capable of taking bail. It is also admitted, that when he had ordered him to prison for want of bail, he was, as to all further proceedings, in that prosecution, *functus officio.* It results, then, from the concessions and reasoning of our adversaries, that a person imprisoned for an offence, by a constitutional provision, bailable, is incapable of taking benefit of this provision, but must remain in gaol. Such a consequence will not be admitted, but from necessity.

The Sheriff, then, in this case, has let a prisoner to bail, who was bailable ; and the objection against this act of the Sheriff comes from the prisoner, and his sureties.

There is no illegality in the consideration of this bond ; for it was merely conceding to the prisoner a benefit, reserved to him by the laws of the land.

But we rely upon a practice for many years, by which this proceeding is sanctioned. The information given is full, and satisfactory, that similar bonds have been taken and suits on them supported ; and that this practice has existed for a course of years. To this, however, it is objected, that this practice is against law. It may be answered, a series of decisions establishes the law.

How many bonds for the liberties of the prison have been judicially established ? Whence is the positive provision of law to warrant them ? There are, indeed, statutes recently enacted, which incidentally recognize them ; but before the existence of such statutes, they had been repeatedly established. It is therefore believed, that no valid objection lies against a recovery, and that the judgment of the Superior Court will be affirmed.

BY THE COURT, the judgment was affirmed, TRUMBULL, Gov. TREADWELL, *Lt. Gov.* ELLSWORTH, AUSTIN, C. GOODRICH, and HOSMER, *Assts.* dissenting.

1805.

DICKINSON
*v.*
KINGSBURY

The following are understood to have been the grounds of this decision. (*g*) The personal liberty of the subject is to be favored, as far as is practicable and safe, until conviction. Bail for his appearance at the Court, in which his guilt or innocence is to be tried, is, at once, the mode of favoring that liberty, and securing the appearance for trial. The regular and only proper time for such bail to be given, is when the accused is brought before the justice for examination; but that this should be *the* time, or the only opportunity, is not, either expressly, or by implication, declared in any statute. The justice orders him to find surety in a certain sum; this surety he may not, at that time, be able to procure; he is, of course, committed to prison. When this is done, the justice has discharged his duty; and the prisoner is in the custody of the Sheriff, where he must remain, perhaps, several months, before his friends can reach him, or other means of procuring bail can be obtained. To avoid this hardship, and in support of the right to bail, it is understood, that in several Counties, it has been practised, and allowed, for a long time past, that the Sheriff take a bond, in the sum prescribed by the justice, for the prisoner's appearance before the Court, and release him from prison. In doing this, the Sheriff acts merely in a ministerial capacity; and, as there is no statute regulation on the subject, it was deemed proper, by a majority of this Court, to allow the practice, until such regulation is adopted. The objection to it comes with a very ill grace from the prisoner; since the bond was taken at his request, and for his benefit; and no corrupt, or improper motive governed the Sheriff in the transaction.

(*g*) It was the practice of this Court to assign their reasons in writing, in cases of reversal only; but individual members of the Court sometimes favored the reporter with their minutes, from which he has been enabled, in cases of affirmance also, to state the grounds of decision.