## Willard Daniels and Others v. The People.

In a criminal recognizance, the description of the offense which defendant is held to answer as "the crime of incest" is sufficient, and the facts constituting the offense need not be set out.

So also where the description is "the crime of attempt to procure an abortion."

Where defendant has been committed for want of bail by the examining magistrate, and, subsequently, on his own application, is let to bail by a commissioner, it is not necessary that the recognizance should show upon its face that the offense was committed within the jurisdiction of the magistrate. The entering into such recognizance being a voluntary act of defendant, of which he can only avail himself on his own showing of a legal commitment, the presumptions are in favor of its validity.

Circuit judges have power, independent of statutory provisions, to take bail in criminal cases out of court, and the Legislature may therefore confer the same power upon circuit court commissioners, even if the power to take bail be a judicial power within the meaning of that clause of the Constitution conferring the judicial power of the state upon specified courts.

But such power is not a judicial power within the meaning of the clause in question.

*Heard May 21st. Decided May 24th.*

Error to Oakland Circuit.

The action was against plaintiffs in error, upon two recognizances. On the trial before the court, without a jury, the circuit judge found the following facts:

"That a short time prior to the 5th day of February, A. D. 1857, Willard Daniels, one of the defendants, was arrested and taken before B. Rush Bagg, Esq., Police Justice of the city of Detroit, at his office in said city, charged with some offense or offenses, of the character referred to in the recognizances hereinafter set forth: That the said Willard Daniels thereupon waived any examination before said police justice, and for want of bail was, by the said police justice, committed to the common jail of the county of Wayne, situated in the city of Detroit, in the said county; and that on the said 5th day of February, 1857, the said Willard Daniels, being so imprisoned, was, at his own request, brought before Robert H. Brown, Esq., a circuit court commissioner for said county of Wayne, at his office in the said city

of Detroit, for the purpose of giving bail for his appear-. ance in the circuit court for said county, to answer to such charges; and thereupon the said defendants entered into re-, cognizances before the said Robert H. Brown, as such com-, missioner as aforesaid, of which the following are copies, viz.:

"*State of Michigan, County of Wayne, ss.* Be it remem-, bered, that on the 5th day of February, one thousand eight hundred and fifty-seven, before me, a circuit court commis-, sioner in and for the county aforesaid, came Willard Daniels, as principal, of Troy, in Oakland county, and Benjamin Daniels, Wilder Winslow, Jr., and Alanson C. Daniels, as. sureties, of Troy, in the county aforesaid, and acknowledged themselves jointly and severally indebted to the People of the State of Michigan, in the sum of four thousand dol-. lars, to be levied of their, and each of their, respective. goods and chattels, lands and tenements, to the use of the said People, if default be made in the condition herein-, under written.

"The condition of the foregoing recognizance is such, that if the said Willard Daniels, who stands committed by B. Rush Bagg, Esq., police justice of the city of Detroit, in the county of Wayne, aforesaid, for the crime of incest, shall personally be and appear at the next March term of the said circuit court, to be holden at the court house in the city of Detroit, in said county of Wayne, on the 17th day of March next, at nine o'clock in the forenoon of that day, and shall then and there plead to said charge, and stand trial thereon, and shall not depart therefrom without leave of the court, and shall abide the order and direction of said court in the premises, the said recognizance shall be null and void, otherwise be and remain in full force and virtue." "WILLARD DANIELS. [L. S.]" "BENJAMIN; DANIELS. [L. S.]" "WILDER WINSLOW, JR. [L. S.]" "ALAN-, SON C. DANIELS. [L. S.]"

"Taken and acknowledged before me, at Detroit, the 5th,

day of February, A. D. 1857. "ROBERT H. BROWN, Circuit Court Commissioner."

The second recognizance was like the first, except that the penalty was but $800, and the offense described therein was "the crime of attempt to procure an abortion."

"And the said court further finds, that afterwards, and at the said March term of the said Circuit Court for the county of Wayne, the said Willard Daniels did not appear in said court in pursuance of his said recognizances, but made default, and thereupon the said recognizances were duly estreated and ordered by said court to be prosecuted, the same having been duly filed in said court. Upon the foregoing facts, the court find the law to be, that the said Robert H. Brown, circuit court commissioner, as aforesaid, had jurisdiction and authority to let the said Willard Daniels to bail, and to take recognizances at the time, in the manner, and under the circumstances aforesaid, and that the said recognizances are good and valid, and binding upon the said defendants, and the said plaintiffs are entitled to recover of the said defendants, by reason of the premises, the sum of four thousand eight hundred dollars; and to each and every of the conclusions of law found by the said Circuit Court for the county of Oakland, upon the foregoing facts, the said defendants then and there excepted."

The defendants, on the trial, objected to the evidence offered of the facts which preceded the giving of such recognizances, and excepted to the ruling of the court admitting the same.

*A. B. Maynard*, for plaintiff in error:

1. The recognizances should have shown that the offenses were committed within the jurisdiction of the police justice. If he had no authority to cause the arrest, the recognizances would be void. — *Solomon v. People*, 15 *Ill.* 291; *State v. Maynard*, 14 *Ill.* 419. A record must be proved by itself; and where there has been no previous indictment, the recog-

nizance should show all the facts which give jurisdiction.— *Commonwealth v. Bail of Gordon*, 15 *Pick.* 193.

2. The first recognizance is void, because no offense known to the common law, or within the statute of this state, is set out or described in it. "Incest" was not a crime at the common law, but was only taken cognizance of and punished by the spiritual courts. If an indictment do not state an offense, or the facts constituting one, upon which an indictment would lie, it is void.— 1 *Dana*, 165; 1 *Stew. & P.* 465; 17 *Wend.* 254; 33 *Maine* 539; 4 *Tex.* 417; 3 *Mich.* 42.

3. Circuit court commissioners have no authority to let to bail. The power is a judicial power, and can not be exercised by them unless possessed by circuit judges at chambers. — *Const. Art.* 6, §16. No such power was ever conferred by our statutes upon circuit judges, and judges had no such power in England, except as given by statute.— 2 *Chit. Gen. Pr.* 23, 24, 34, 327; and see 1 *A. K. Marsh.* 421; 1 *Mo.* 403; 15 *Ohio*, 580. Our statutes which conferred this power upon circuit court commissioners, were repealed, by implication, by the Constitution.

*H. D. Terry*, for the People:

1. It is not necessary that the recognizance should state the specific charge in such language as would be required in an indictment. It is sufficient if it inform the court of the nature of the offense charged, by the use of any term which is ordinarily understood to embrace it.—4 *Mich.* 609; 9 *Yerg.* 386; 17 *Wend.* 252; 15 *Ala.* 431; 2 *Ind.* 371; 8 *Tex.* 547; 15 *Ill.* 291; 10 *Barb.* 35; 3 *Mich.* 50.

2. The recognizances need not show that the offenses were committed within the city of Detroit. It is sufficient that the justice had authority in cases of that general description, and the condition is to do some thing to which a party may be legally bound by recognizance. The bailing officer gets jurisdiction by the voluntary appearance of the

prisoner before him and entering into the obligation. The presumption is that the charge was properly preferred and investigated, and the proper decision made, before it was entered into and acknowledged. — 2 *Comst.* 92; 4 *Denio*, 530; 10 *Barb.* 35; 1 *Blackf.* 200, 338; 5 *Barb.* 360, 511; 4 *Scam* 477; 3 *A. K. Marsh.* 456; 4 *Mich.* 609.

3. The circuit judges had power to hold to bail, in criminal cases, at chambers. The power was expressly conferred upon judges of the Supreme Court, which the circuit judges were *virtute officii.* They had the power independent of this statute. They were conservators of the peace, and had authority to issue warrants of arrest, and, as a necessary incident, the power to let to bail. — *Vaughan,* 103; 4 *Bl. Com.* 299; 1 *Salk.* 105; 2 *Strange,* 911; *Hob.* 195.

The power, as exercised in this case, was merely ministerial — not judicial. If it were in the discretion of the commissioner to let to bail or refuse to do so upon the facts presented, it would be the exercise of a judicial power; but under our laws and Constitution, he can not refuse; he is bound to take the recognizance, and therefore acts ministerially. — *Const. Art.* 6, §29.

CAMPBELL J.:

Judgment was rendered in the Circuit Court for the county of Oakland, against the defendants, upon two recognizances taken before the circuit court commissioner of Wayne county in February, 1857. Each purported to be for bailing Willard Daniels upon commitment by the police justice of Detroit, to answer charges, one of "the crime of incest," and the other of "the crime of attempting to procure an abortion." Errors are assigned, *First,* That the crimes are not sufficiently described as legal offenses; *Second,* That the jurisdictional facts to authorize the taking of the recognizances do not sufficiently appear; and, *Thirdly,* That the circuit court commissioner had no power to take bail in any case.

In the case of the *People v. Rutan,* 3 *Mich.* 42, and the

*People v. Dennis*, 4 *Mich.* 609, the late Supreme Court referred to the rules governing in the description of offenses in recognizances.   We think the description of the offenses charged in each of the instruments before us substantially accurate.   In an indictment it is necessary to conform to legal phraseology, and for that reason it would not be sufficient to use the language which is used here.   But we do not think the legal phrases describe the offenses any more perfectly to the common understanding, or that they are any less liable to misconstruction.   Incest means, in all cases, illicit intercourse between persons within the degrees of consanguinity within which marriages are forbidden by law.   This is the offense prohibited by statute, and the statute itself uses the term "incestuous," to characterize the illegality of the marriage. — 2 *Comp. L. p.* 1543.   An attempt to procure an abortion is equally well described by the statute (2 *Comp. L. p.* 1509) relating to attempts to procure miscarriage.   The terms used in the index to the Compiled Laws are precisely the same contained in these recognizances.   They are not open to mistake or ambiguity.

It is next claimed that it should appear upon the face of the recognizances, that the police justice in making the commitment acted within his jurisdiction.   No objection is made to his power to commit for such offenses, if charged upon a proper complaint to have been committed within his jurisdiction; but the error assigned is that it does not appear that the crimes charged were committed within his jurisdiction.

This is not a case where a person is held to bail by the examining officer, and forced to enter into the recognizances or stand committed.   Here the commissioner acts upon the application of the prisoner, who has already been committed by a magistrate.   The statute declares that the commissioner, "on application of any prisoner committed for any bailable offense, may inquire into the case and admit such prisoner to bail." — 2 *Comp. L. p.* 1577.   And the same statute (*p.*

1579) declares that no action shall be defeated "for any defect in the form of the recognizance, if it sufficiently appear from the tenor thereof, at what court the party or witness was bound to appear, and that the court or magistrate before whom it was taken was authorized by law to require and take such recognizance.

The commissioner is one of the officers named as having, in the language of the court in *People v. Dennis,* "authority by law to act in cases of that general description"; and, further than this, it appears, in the language of the statute, that Daniels was "committed for a bailable offense." It would be dangerous to require, in cases of this character, any further recital of jurisdiction, and would lead into collateral inquiries entirely out of place. It must be remembered that the jurisdiction of the commissioner is invoked by the prisoner himself, and not against him. The accused must bring himself within the statute before he has any right to ask the aid of the commissioner. If he has been illegally committed, he has the remedy by *habeas corpus,* and in no other way. The recognizance is therefore a voluntary act, and one of which the accused could not avail himself, except upon his own showing of a legal commitment. He certainly can not now claim that it is defective in not containing affirmative statements establishing that fact, even if such defects exist. The presumptions in such case must be in its favor. Voluntary recognizances have always received a liberal construction. — *Champlain v. People,* 2 *Comst.* 82. We should be far from holding that such presumptions may not be rebutted, and we are not aware of any rule preventing it. But, until rebutted, we think the recognizances were certainly sufficient.

It is claimed by the respondents that the circuit court commissioner had no power to act. Prior to the Constitution of 1851 this power was vested in commissioners by express statute. But it is urged that the Constitution operated as a repeal of this, — *First,* Because it provided that the

judicial' powers of commissioners should not exceed those of a circuit judge at chambers; and, *Second*, Because circuit judges are not mentioned in the statute, and, whether mentioned or not, have no such chamber powers.

The statute mentions only judges of the Supreme Court. But under the new Constitution, the circuit judges were at that time judges of the Supreme Court, and no other persons answered the description. And we do not regard the language of the Constitution as at all ambiguous upon the extent of judicial power authorized to be conferred on these officers.    It is well known that many powers, legal and equitable, are vested in the circuit judges out of court; and in those counties where no judge resides, great inconveniences would arise if no one else could perform those functions.    Many of these powers had, under the old Constitution, been vested in circuit court commissioners.    We think the plain meaning of the Constitution was to permit the Legislature to invest these officers with any of the judicial powers which a circuit judge might lawfully exercise when not in court.    How many of these powers should in fact be granted was left to the legislative discretion.    Admitting the power exercised by the commissioner to be in all respects a judicial power, it is, we think, plainly within the terms of the Constitution.    It is a power which has been intrusted to single judges from remote centuries.

But it admits of grave doubts, at least, whether the power of letting or holding to bail is "*judicial power*," within the meaning of that clause of the Constitution which confines such power to courts.    By the judicial power of courts is generally understood the power to hear and determine controversies between adverse parties, and questions in litigation. — See, upon this subject, *Story on Const.* §1640, *et seq.*    Although the whole judicial power of the United States is vested in the Federal Courts, the power to take examinations and hold to bail has always been

vested in certain officers who are not judges of those courts. It was held in *Ex parte Gist*, 26 *Ala.* 156, that this delegation was lawful for the reason that it did not bestow "judicial power" within the meaning of the Constitution. And the court of King's Bench, in the case of *Cox v. Coleridge*, 1 *B. & C.* 37, distinguish expressly between trials before magistrates and proceedings to examine and hold to bail, and declare the latter not to be judicial acts. *Holroyd J.* says: "A magistrate, in cases like the present, does not act as a court of justice; he is only an officer deputed by the law to enter into a preliminary inquiry"; and *Best J.* says: "So far was this examination from being a judicial inquiry, which means an inquiry in order to decide on the guilt or innocence of the prisoner, that, as the law was administered a few years after the passing these statutes, the justices, even where it appeared that a prisoner was not guilty, were not to discharge him without bail.—*Dalton*, *c.* 164. The modern practice is, indeed, different, and is more consistent with law and humanity; and I refer to *Dalton* only to show that it could not then have been the opinion of the profession that this examination was any thing like a judicial inquiry."

The right to bail is a constitutional privilege, and if it could only be obtained through courts, not only would their sessions be cumbered with applications, but, where those sessions are infrequent, there would be a gross failure of justice, equivalent to a denial of this unquestioned right. The origin of the whole system is to be found in the authority of conservators of the peace. While each court might commit and hold to bail offenders to be tried before it, the power, in other cases, was vested in the court of King's Bench, and in its judges separately, as well as in other high officers. The office of Justice of the Peace was originally created for the same purpose.— 3 *Hawk. Pl. Cr.* 51, 231; *Bac. Abr.* "*Justices of the Peace.*" Our Constitution makes judges and justices conservators of

the peace. — *Const. Art.* 6, §19. Each person holds the authority, not as a member of a court while in session, but as an officer in that special capacity. Conservators of the peace appear to have been regarded as no more judicial than executive officers, and several of the high executive functionaries exercised their powers. Discretionary and judicial powers are often convertible terms, and there are many acts requiring the exercise of judgment, which may be fairly said to be of a judicial nature, and yet in no sense coming within the judicial power as applicable to courts. In Connecticut, it was early held that a sheriff could take bail in a criminal case, and that it was not a judicial act. — *Kingsbury v. Dickinson*, 2 *Day*, 1. And in New York, in *Tillotson v. Cheetham*, 2 *Johns.* 63, it was held that a sheriff presiding over a jury of inquest, acted ministerially and not judicially, and could therefore act by deputy. In that case the subject is fully reviewed.

Without undertaking to lay down precisely where the dividing line is, it is very manifest that the discretion exercised and needed in an inquiry into the amount of bail which should be required of a prisoner, is of a very different character from the judicial discretion used in the trial of causes, and has very little to do with fixed legal principles. It must, of necessity, be open to the Legislature to provide for the various new cases which from time to time arise, requiring some discretionary powers to be vested in proper officers. The rights of individuals to have fair trials in the courts are amply secured by the Constitution. Beyond this, it would be a forced construction to hold that every act and investigation involving the exercise of a *quasi* judicial discretion must be vested, of necessity, in courts which are utterly unfitted by their organization for any such purposes.

Upon any view of this question, we think the commissioner had power to act in the premises.

The judgment must be affirmed.

The other Justices concurred.