Kelly, J.
(concurring in result only). I agree with the opinion of Justice WEAVER and with the result reached by the majority.
The Court concludes that plaintiffs have standing and that they satisfy the judicial test that was adopted in Lee v Macomb Co Bd of Comm’rs, 464 Mich 726, 747; 629 NW2d 900 (2001) (Kelly, J., dissenting). The concurring justices believe that this Court should not have adopted the test in Lee, which incorporates the Lujan requirements.[1] I believe that Lee should not be applied in cases like this one.
*677 The majority disagrees. Consequently, this case stands for the proposition that an individual bringing suit under the Michigan environmental protection act (MEPA) must show a particularized injury to satisfy standing.
However, the majority goes on at great length to assert that the standing provision in MEPA would violate the constitutional separation of powers clause absent a particularized injury. The Court’s determination on standing renders the majority’s discourse on the separation of powers doctrine unnecessary. This discourse is simply dicta. Moreover, it departs from the Court’s usual allegiance to the principle that we do not reach a constitutional question when narrower grounds will suffice to resolve an issue. J & J Constr Co v Bricklayers & Allied Craftsmen, Local 1, 468 Mich 722; 664 NW2d 728 (2003).
If a decision were necessary about whether, absent the showing of a particularized injury, MEPA’s standing provision violates the separation of powers doctrine, I would hold that it does not. The Legislature has the authority to grant standing to a party who does not satisfy the judge-made standing requirements of Lujan. Lee wrongly held that the federal requirements are prerequisites that every plaintiff must satisfy.
STANDARD OF REVIEW
We review motions for summary disposition de novo. Hazle v Ford Motor Co, 464 Mich 456, 461; 628 NW2d 515 (2001). Whether plaintiffs have standing is a question of law that is also reviewed de novo. Cardinal Mooney High School v Michigan High School Athletic Ass’n, 437 Mich 75, 80; 467 NW2d 21 (1991). When considering a ruling on a motion for summary disposition under MCR 2.116(C)(8), we look only at the pleadings and accept as true all well-pleaded facts. Radtke v *678 Everett, 442 Mich 368, 373; 501 NW2d 155 (1993), citing Abel v Eli Lilly & Co, 418 Mich 311, 324; 343 NW2d 164 (1984).
PROCEEDINGS BELOW
The Marquette Circuit Court applied Lee and dismissed this lawsuit finding that plaintiffs failed to demonstrate that they had standing.[2] The Court of Appeals disagreed and reinstated the claim, holding that plaintiffs have standing under MEPA. Unpublished memorandum opinion of the Court of Appeals, issued June 11, 2002 (Docket No. 232706). We granted leave to appeal specifically limited to the issue “whether the Legislature can by statute confer standing on a party who does not satisfy the judicial test for standing” that was adopted in Lee. 468 Mich 941 (2003).
THE LEGISLATURE MAY CONFER RIGHTS ENFORCEABLE THROUGH THE POWER OF THE JUDICIARY
The Michigan environmental protection act explicitly recognizes the right of “any person” to bring suit in Michigan courts to protect the public trust in our land, water, and other natural resources. The Legislature accomplished this by writing broad standing into the act, supplementing the state’s enforcement power with what has been termed “private [attorneys [gjeneral.” Associated Industries of NY State v Ickes, 134 F2d 694, 704 (CA 2, 1943). As the beneficiaries of that trust, each of us is entitled to bring suit to conserve our environment.
*679 The act fulfills a state constitutional obligation. Hwy Comm v Vanderkloot, 392 Mich 159; 220 NW2d 416 (1974). It springs from Const 1963, art 4, § 52 which provides:
The conservation and development of the natural resources of the state are hereby declared to be of paramount public concern in the interest of the health, safety and general welfare of the people. The legislature shall provide for the protection of the air, water and other natural resources of the state from pollution, impairment and destruction.
Intentionally mirroring this language in the act, the Legislature wrote: “any person may maintain an action . . . for declaratory and equitable relief. . . for the protection of the air, water, and other natural resources” of the state. MCL 324.1701(1).
Its decision to open wide the courthouse doors through the act’s standing provision merely returns to the people some of the power to ensure that environmental laws are executed. Const 1963, art 1, § 1. The courts should acknowledge and respect this provision as a clear expression of legislative intent. Dressel v Ameribank, 468 Mich 557, 562; 664 NW2d 151 (2003).
MICHIGAN’S USE OF PRIVATE ATTORNEYS GENERAL
When interpreting the Constitution, we give its words their common understanding. We assume that they were not intended to have “ ‘elaborate shades of meaning’ ” or to require, in order to be understood, “ ‘the exercise of philosophical acuteness or judicial research.’ ” Michigan Farm Bureau v Secretary of State, 379 Mich 387, 391; 151 NW2d 797 (1967), quoting 1 Story, Constitution (5th ed), § 451, p 345.
*680 We are mindful that the people expect and are entitled that their constitutional rights not be hobbled by the courts. With regard to art 4, § 52, the people may reasonably depend that the courts will not thwart the Legislature’s efforts to fulfill its mandate to protect our public’s trust in Michigan’s natural resources. We must not import requirements for access to the courts that are not founded on our Constitution. Yet the majority has created one such requirement by adopting the Lujan “case” and “controversy” rule.
Before Lee, other provisions in our state Constitution allowed suits to be brought in state courts by parties who do not satisfy the Lujan requirements. For example, art 11, § 5 allows “any citizen” to seek an injunction to enforce its provisions. The Headlee Amendment states, “Any taxpayer of the state shall have standing to bring suit in the Michigan Court of Appeals to enforce sections 25 through 31”[3] of article 9. Const 1963, art 9, § 32 (emphasis added). This Court may issue advisory opinions.[4] A particularized injury need not be demonstrated in order to sustain suits under these provisions. See In re Request for Advisory Opinion on Constitutionality of 1997 PA 108, 402 Mich 83; 260 NW2d 436 (1977).[5]
And citizens’ suits have long been accepted in our jurisprudence. They, along with other actions brought by a person who lacks an individualized injury, were known to the framers of the federal constitution. They existed in the legal practice in the United States and England when the federal constitution was written. *681 Individuals were allowed, also, to bring suits for writs of quo warranto and mandamus. Sunstein, What’s standing after Lujan? Of citizens suits, “Injuries,” and Article III, 91 Mich L R 163, 170 (1992). Individuals were allowed, also, to bring mandamus actions in the states. See Sunstein at 171. See also Union Pacific Railroad v Hall, 91 US 343 (1875).
In England, suits by individuals, private attorneys general, could be brought under the informers’ action and the relator action.
In the informers’ action, cash bounties were awarded to strangers who successfully prosecuted illegal conduct. In relator actions, suits would be brought formally in the name of the Attorney General, but at the instance of a private person, often a stranger. [Sunstein at 172.]
Merely because the framers of our state Constitution created a tripartite government like the federal government, it does not follow that they intended to eliminate actions by private attorneys general.
THE SEPARATION OF POWERS ARGUMENT
The state separation of powers doctrine reads simply:
The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.[6] [Const 1963, art 3, § 2.]
*682 It has been understood that this provision is not to be applied in an overly rigid fashion. Some overlap is acknowledged to exist in the functioning of the various branches. The state Constitution permits it. For instance, a civil rights commission within the executive branch is vested with some lawmaking power. Const 1963, art 5, § 29. Article 4, § 33 provides the Governor with veto power over legislation, and art 11, § 7 provides the Legislature with impeachment authority. Indeed, any grant of legislative powers to executive agencies would be unconstitutional per se if some overlap between the branches of government were not permissible. See JW Hampton, Jr, & Co v United States, 276 US 394; 48 S Ct 348; 72 L Ed 624 (1928).
The courts, also, have recognized that the separation of powers doctrine allows limited overlap and interaction between the branches. Soap & Detergent Ass’n v Natural Resources Comm, 415 Mich 728, 752; 330 NW2d 346 (1982). See also Judicial Attorneys Ass’n v Michigan, 459 Mich 291, 315-316; 586 NW2d 894 (1998) (Taylor, J., dissenting), citing the Court of Appeals dissent of Judge MARKMAN. Accordingly, when one branch exercises its power, it may overlap the exercise of power belonging to another branch. For example, the executive branch may utilize hearing officers to attempt to resolve disputes. The judiciary may review the decisions of those hearing officers, although doing so may appear to infringe on the executive branch’s exercise of its power to administer the law.[7]
The majority in Lee applied the federal separation of powers and standing doctrines to the state and created a mandatory particularized injury requirement for *683 standing. This requirement is not found in the text of either the federal or state constitutions. To exist, it had to be gleaned from the historical context of the constitutions. However, a plumbing of that context reveals no support for a belief that a person must show a particularized injury before gaining standing in order to bring a citizens’ suit. See pp 680-681 of this opinion.
Even though the federal separation of powers doctrine has been found to require a particularized injury for standing in federal courts, it does not follow that the same rule applies in Michigan. Our state’s courts are not identical to our federal courts. They are part of a government having broader powers and broader jurisdiction than the federal government and having judges who are selected by the people.
Although the state and federal governments are similarly structured, the scope of the powers of their respective branches is different. That is because the natures of the two governments are inherently different. The federal government is one of enumerated powers. The states retain any powers not expressly ceded to the federal government. US Const, Am X.
State sovereignty to address any social problem that threatens the public welfare is plenary. Washington-Detroit Theatre Co v Moore, 249 Mich 673, 680; 229 NW 618 (1930). Michigan’s Constitution, like that of many other states,[8] includes detailed substantive social and economic provisions. See, e.g., articles 8-10 on education, finance and taxation, and property. Accordingly, the power of the state’s judiciary is plenary as well, and Michigan’s courts have general, broad subject-matter jurisdiction. Const 1963, art 6, § 1. See MCL 600.775.
*684 By contrast, the jurisdiction of federal courts[9] is limited. For instance, a federal case must arise under a federal question or the parties must have diversity of citizenship. Federal judicial power is limited to “cases” and “controversies,” a fundamental restriction. Allen v Wright, 468 US 737, 750; 104 S Ct 3315; 82 L Ed 2d 556 (1984). Contrary to the majority’s assertion,[10] I do not argue that this restriction defines, the judicial power. Instead, it limits federal courts’ utilization of the judicial power to certain disputes. By contrast, the judicial power inherent in Michigan’s courts may be applied under a wider range of circumstances.
The federal standing and separation of powers doctrines adopted by Lee from Lujan are predicated in part also on the fact that federal judges are not directly accountable to the people. United States v Richardson, 418 US 166, 180; 94 S Ct 2940; 41 L Ed 2d 678 (1974) (Powell, J., concurring). Federal judges are appointed by the President[11] and may be removed only by impeachment.[12] By contrast, our state judges are elected by the people.[13]
The United States Supreme Court has recognized that access to state courts is not limited by the federal constitution. ASARCO, Inc v Kadish, 490 US 605, 616-617; 109 S Ct 2037; 104 L Ed 2d 696 (1989). Everything considered, it is not surprising that the qualifications for standing in state courts are broader than in federal courts.
*685 Other states have determined that their judicial power is not constrained by the federal model. For example, Indiana has held:
While Article III of the United States Constitution limits the jurisdiction of federal courts to actual cases and controversies, the Indiana Constitution does not contain any similar restraint. Thus, although moot cases are usually dismissed, Indiana courts have long recognized ... an exception to the general rule when the case involves questions of “great public interest.” [In re Lawrance, 579 NE2d 32, 37 (Ind, 1991).]
Similarly, Minnesota has recognized that federal standing concerns historically have been related to whether a dispute brought for adjudication is in an adversary context and is capable of judicial resolution. However, when standing has been conferred by a state statute, “there is no constitutional basis for imposing a more stringent standing requirement [than that] which is set by the governing statute.” Minnesota Pub Interest Research Group v Minnesota Dep’t of Labor & Industry, 311 Minn 65, 73; 249 NW2d 437 (1976), citing Ass'n of Data Processing Service Organizations, Inc v Camp, 397 US 150, 151; 90 S Ct 827; 25 L Ed 2d 184 (1970). See also Dep’t of Revenue v Kuhnlein, 646 So 2d 717 (Fla, 1994), Chester Co Housing Auth v Pennsylvania State Civil Service Comm, 556 Pa 621; 730 A2d 935 (1999), In Life of the Land v Land Use Comm, 63 Hawaii 166; 623 P2d 431 (1981), and Sears v Hull, 192 Ariz 65; 961 P2d 1013 (1998).
Of course, this is not to say that, before Lee, Michigan was without standing requirements. Simply, they were more encompassing than the federal requirements. To have standing in Michigan courts, a person had to show the existence of a dispute over a legal right. Daniels v *686 People, 6 Mich 381, 388 (1859). See Sunstein at 170. The necessary showing did not need to rise to the level of a “case” or “controversy.”[14]
Our state has relied on other requirements which also serve to ensure that standing is not too broadly applied. For example, the ripeness requirement ensures that a claim has actually arisen and that it has not been negated. Obenauer v Solomon, 151 Mich 570; 115 NW 696 (1908). The requirement that the case not be moot ensures that it does not present a purely abstract question and that only actual disputes are litigated. East Grand Rapids School Dist v Kent Co Tax Allocation Bd, 415 Mich 381, 390; 330 NW2d 7 (1982). See p 687 of this opinion.
I believe that our state’s standing provisions before Lee sufficiently ensured that judicial power was properly constrained while allowing vigorously pursued suits to proceed. The decision in Lee wrongly blocked access to our state’s courts.
Hence, contrary to the majority’s assertion, Lee’s standing requirements are not essential to prevent the judicial branch from overpowering the legislative branch and the executive branch.
THE SEPARATION OF POWERS DOCTRINE AND MEPA
Turning to the interplay between the Michigan environmental protection act and the separation of powers clause, I cannot conclude that the act offends the clause.
Separation of powers principles ensure that courts do not move beyond the area of judicial expertise and that *687 political questions are not answered by a branch of government unaccountable to the people. House Speaker v Governor, 443 Mich 560, 574; 506 NW2d 190 (1993). I am unable to discern how MEPA’s private attorneys general standing provision will offend these principles. The Legislature made the public’s interest in the environment a legal right.[15] It is authorized to determine who may enforce such rights and in what manner. Davis v Passman, 442 US 228, 241; 99 S Ct 2264; 60 L Ed 2d 846 (1979).
MEPA is an expression of public concern for protecting the state’s natural resources that was passed into law through the normal political process. It reflects the determination that the resources of the executive branch should be supplemented with those of the people. The majority today threatens to diminish the victory signified by its passage.
MEPA does not enable the judiciary to exercise legislative power at the instigation of a disinterested plaintiff. The structure of MEPA ensures that the plaintiffs are not mere interlopers. The act requires a plaintiff to make a prima facie showing of environmental damage. MCL 324.1703. Hence, there will always be alleged actual or imminent harm that will ensure that cases like this one will be ripe and that they will not be moot. See p 686 of this opinion.
This case presents one such actual, live controversy. The defendants’ mine expansion is imminent. Plaintiffs’ membership includes people who live and recreate in the area of the mine and claim to be adversely affected by its expansion.
Environmental and other collective concerns often *688 have strong personal manifestations, called “passive use” or “standby value” interests. See, e.g., General Electric Co v United States Dep’t of Commerce, 327 US App DC 33, 38; 128 F3d 767 (1997). These interests ensure that environmental suits are vigorously pursued by people with a strong personal belief in their claim.
I cannot perceive that the judiciary would be enabled to make policy by this Court’s affirmance of the constitutionality of MEPA’s standing provision without the need for particularized injury. Sutherland v Governor, 29 Mich 320, 324 (1874).
Neither does MEPA offend executive authority. The Constitution states that “The executive power is vested in the governor.” Const 1964, art V, § 1. However, it is not vested solely in the Governor. Obviously, the Governor may delegate some of her power. As stated, the Legislature may vest some of its power in an agency. Similarly, the Legislature may return it to the people. The people know how to vest power exclusively in a single branch of government. For example, our Constitution says, “The judicial power is vested exclusively in one court of justice.” Const 1963, art VI, § 1 (emphasis added).
The Legislature’s decision to allow the people to directly enforce MEPA would offend the executive branch if it interfered with the executive branch’s ability to accomplish its functions. Nixon v Administrator of Gen Services, 433 US 425, 443; 97 S Ct 2777; 53 L Ed 2d 867 (1977), citing United States v Nixon, 418 US 683, 711-712; 94 S Ct 3090; 41 L Ed 2d 1039 (1974). MEPA does not do this.
MEPA includes a mechanism to ensure that executive branch decisions are respected. It allows the judiciary to refer environmental protection act cases to state agencies for resolution. MCL 324.1704(2). MEPA is explicitly *689 “supplementary to existing administrative and regulatory procedures as provided by law.” MCL 324.1706. Nothing in it encourages or authorizes the judiciary to itself exercise executive power or hinders the discretion of the executive branch. MEPA poses no danger of “aggrandizement or encroachment” of power that would trigger separation of powers concerns. Mistretta v United States, 488 US 361, 382; 109 S Ct 647; 102 L Ed 2d 714 (1989).
THE NEW JUDGE-MADE STANDING LIMITATION
Obviously, this Court is entitled to constrain its own power and limit standing as it has done in this case. But in doing so, it creates a self-inflicted wound. See Warth v Seldin, 422 US 490, 500; 95 S Ct 2197; 45 L Ed 2d 343 (1975). No constitution requires it. People v Goldston, 470 Mich 523, 532-535; 682 NW2d 479 (2004). It is an entirely judge-made limitation, a standing requirement fabricated by judges where none existed before. And, because it subverts the popular will, it injures more than the judicial branch. It injures the people.
The Court is ill-advised to curb its authority under the guise of respect for another branch of government. Its decision today is an unwarranted contraction of the right of the people to use the judicial and the legislative power to protect their interest in preserving the environment. It is not, as the majority asserts, a prudent check on an attempted expansion of legislative power. Ante at 616-618.
Mepa does not violate constitutional separation of powers principles despite the fact that it lacks a particularized injury requirement. These principles require that the judiciary respect the Legislature’s decision and fulfill its role to adjudicate disputes as a co-equal branch of the state’s government.
*690 The majority advances a parade of horribles[16] that it fears would emerge if MEPA’s standing provision were not supplemented by the Lujan standing requirements.[17] When examined closely, the horribles tend to shrink. Under MEPA, a plaintiff must establish prima facie environmental harm sufficient to support a claim. See MCL 324.1703(1) and Nemeth v Abonmarche Dev, Inc, 457 Mich 16; 576 NW2d 641 (1998); MCR 2.116(C)(8), (10). Moreover, existing court rules deter frivolous suits. See MCR 2.114 and MRPC 3.1 and 3.3.
It is improper to hold the plaintiffs in this case to the Lujan judicial test for standing. Given that the express will of the people is to the contrary, plaintiffs now and in the future should not have to shoulder the Lujan standing burden in MEPA cases.
CONCLUSION
I agree with the opinion of Justice WEAVER and with the result reached by the majority. Plaintiffs have standing. The authority of the Legislature to give the people a legal right to protect their interest in the environment through private attorneys general should not be abridged.
I would find that the Michigan Legislature did not violate the state Constitution by granting standing under MEPA to a party who does not satisfy the judicially crafted Lee test. The applicable test here, the MEPA test, was carefully devised by the Legislature. Because it *691 gave standing to “any person,” I believe that any person should be able to avail himself of that law. The Court of Appeals decision and analysis should be affirmed and the case remanded to the circuit court for trial.
CAVANAGH, J., concurred with KELLY, J.

 Lee adopted the United States Supreme Court requirements of Lujan v Defenders of Wildlife, 504 US 555; 112 S Ct 2130; 119 L Ed 2d 351 (1992). Lujan requires a plaintiff seeking standing to establish an actual or imminent injury to his or her legal rights that is concrete and particularized. There must be a causal connection between the defendant’s action and the plaintiffs injury, and the injury must be one for which the court can grant redress. Lee at 739-740, quoting Lujan at 560-561. I have come to believe that Lee wrongly adopted en toto the federal standing requirements. As Justice Weaver notes, the Lujan standing test was not presented by the parties. Also, the statute at issue in Lee differed from the statute under consideration here in one important respect: it lacked a provision expressly authorizing an individual to maintain an action for a violation of the act without having suffered a particularized injury. Here the standing issue has been fully presented and discussed. Moreover, I do not believe that rejecting the Lujan requirements now would work any unfairness that would mandate their continuing retention in Michigan. Murray v Beyer Mem. Hosp, 409 Mich 217, 222-223; 293 NW2d 341 (1980).

 Defendants’ motion to dismiss plaintiffs’ petition for interlocutory review was brought under MCR 2.116(C)(8). Although the circuit court found that plaintiffs had failed to establish a prima facie case, the order dismissed the case solely for lack of standing.

 These sections address the state’s power to tax and spend.

 Const 1963, art 3, § 8.

 The inference that I draw from these provisions is that the state’s judicial power is broad. The majority draws the opposite inference. See ante at 625 n 13.

 The most obvious meaning of this sentence is that one individual may not simultaneously hold office in more than one branch of government. See Lutz, Popular Consent and Popular Control: Whig Political Theory in the Early State Constitutions, (Baton Rouge: La State U Press, 1980), p 96. The federal constitution does not contain this prohibition. See O’Donaghue v United States, 289 US 516; 53 S Ct 740; 77 L Ed 1356 (1933).

 To say as the majority does that the powers of the three branches do not overlap while the exercise of their respective powers may, ante at 644, is a semantic distinction lacking a difference.

 Hershkoff, State courts and the “Passive Virtues": Rethinking the judicial function, 114 Harv L Rev 1833, 1855 n 116 (2001).

 See US Const, art III, § 2.

 Ante at 627.

 US Const, art II, § 2.

 US Const, art III, § 1 and art II, § 4.

 Const 1963, art 6, §§ 2, 8, 12, 16.

 When the majority characterizes “cases” and "controversies” as synonymous with “disputes,” ante at 614, it is mistaken. See Lujan at 560. Notably, the majority produces no authority for this proposition. Clearly, “case” and “controversy” have specific meanings. Id.

 An inherent legislative power is to create legal rights enforceable through the judiciary and define chains of legal causation. See Lujan at 578, 580 (Kennedy, J., concurring).

 For a similar demonstration of this majority’s proclivity for doomsday prophesy, see its conclusion in Preserve the Dunes v Dep’t of Environmental Quality, 471 Mich 508; 684 NW2d 847 (2004). I note that there, I would have respected the will of the people to enjoin critical dune mining by ineligible entities. The majority should have done likewise. See ante at 638 n 25.

 See ante at 649-650.